FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 20, 2016

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CATHLIN DONOHUE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | No.  2:15-CV-0070-SMJ<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, are cross-summary-judgment motions. ECF Nos. 13 & 15. Plaintiff Cathlin Donohue appeals the Administrative Law Judge's (ALJ) denial of benefits. Plaintiff contends the ALJ erred in (1) finding that his impairments did not meet or equal listing 1.02; (2) rejecting her objective symptom testimony; (3) rejecting the opinions of treating and reviewing medical providers; (4) determining that he would not be disabled if she stopped her substance use; and (5) failing to conduct an adequate step four analysis.  The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision.

//

ORDER **-** 1

After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court affirms the ALJ's decision and therefore denies Plaintiff's motion and grants the Commissioner's motion.

**A.    Statement of Facts[1]**

Ms. Donohue was born on July 28, 1971. Tr. 209. She was 42 years old at the time of the hearing. Plaintiff alleges that since the alleged onset date, she has been unable to sustain competitive employment on a regular and continuing basis due to a combination of impairments, including: depression; anxiety; PTSD; peripheral neuropathy; status-post hip replacement in 1998; sleep apnea; left ear hearing loss; cervical spondylosis; and status-post left fibular fracture, right ankle reattachment, and Achilles tendon repair.

**B.    Procedural History**

Ms. Donohue filed concurrent SSI and DIB applications on April 26, 2011, alleging an onset date of July 31, 2008. Tr. 17. The applications were denied initially and upon reconsideration, a hearing was requested. On October 10, 2013, a hearing was held before Administrative Law Judge (ALJ) Lori L. Freund. Tr. 17. At the hearing Ms. Donohue amended her alleged onset date to August 1,

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

ORDER - 2

2011, and withdrew her application for Title II benefits. Tr. 17, 51. The ALJ concluded that in the absence of any substance use, Ms. Donohue would be able to perform past relevant work as a bookkeeper. Tr. 32. The claimant filed a request for review by the Appeals Council, which was denied.

### C.  Disability Determination

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

ORDER - 3

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work she has performed in the past by examining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform her previous work, she is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of her age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show (1) the claimant can perform

other substantial gainful activity, and (2) that a significant number of jobs exist in the national economy which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**D.   Standard of Review**

On review, the Court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). The Court upholds the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision).

Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). It means such

ORDER **-** 5

relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Such inferences and conclusions as the ALJ may reasonably draw from the evidence will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

**E.    Analysis**

*i.    Listing 1.02*

To qualify as disabled under one of the Listings of Impairments set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant must satisfy a demanding standard: the Commissioner "explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Specifically, "[t]he listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'" *Id*. To that end, for a claimant to show that her impairment satisfies a listing, she "must meet all of the specified medical criteria." *Zebley*, 493 U.S. at 530. "An impairment that manifests only some of the criteria, no matter how severely, does not qualify." *Id*.

Here, Plaintiff contends that her impairments met or equaled Listing 1.02(A),

which required her to prove:
> Major dysfunction of a joint(s) . . . [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankyloses, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). . . . [w]ith . . . [i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02(A).

The ALJ properly concluded that Plaintiff failed to establish the criteria of Listing 1.02(A). As the ALJ explained, there was no "medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses" of any major peripheral joints. Tr. 26; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02(A). Given that Plaintiff was required to prove her impairments met "all of the specified medical criteria" for Listing 1.02(A), the absence of this element is fatal to her argument.

Further, although Plaintiff was required to identify signs of limitation of motion or other abnormal motion of the affected joints, Eric Brown, M.D., observed the exact opposite: in May 2011, Dr. Brown found that Plaintiff had a "[g]ood range of motion" in her extremities with "[n]o joint swelling or deformity." Tr. 687. Here, it is clear that the ALJ's decision was in accord with the medical evidence of record. Substantial evidence supports the ALJ's finding that Plaintiff's impairments did not meet or medically equal Listing 1.02(A).

//

ORDER - 7

*ii.   Medical Opinions*

Plaintiff argues that, in the process of denying Ms. Donohue's claim, the ALJ improperly rejected the opinions of her treating and examining medical providers, including Dr. Mays, and Dr. Shields.

**1. Mark Mays, Ph.D.**

Dr. Mays diagnosed Plaintiff with cognitive disorder (not otherwise specified) and dependent personality disorder in May 2012. Tr. 989. However, Marian Martin, Ph.D., a medical expert who reviewed Plaintiff's records, persuasively described why those diagnoses were inaccurate, Tr. 1036-37. Tr. 21.

The ALJ is responsible "resolving conflicts in medical testimony." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). In carrying out that duty, the ALJ carefully weighed the competing views of Dr. Mays and Dr. Martin and reasonably found that Dr. Martin's opinion was more consistent with the evidence of record. Tr. 21. Accordingly, the ALJ found that Plaintiff's alleged cognitive disorder and personality disorder were not medically determinable impairments at step two. Tr. 21. Plaintiff's only challenge to the ALJ's analysis is based on her perception that the "opinion of a non-examining physician cannot, by itself, constitute substantial evidence sufficient to reject the opinion of either an examining or treating physician." ECF No. 13 at 14. But a non-examining medical expert's opinion, such as Dr. Martin's, will "constitute substantial evidence when it is consistent with other

independent evidence in the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). That is precisely the case here. The medical record supported Dr. Martin's opinions.

### 2. Heidi Shields, M.D.

In June 2010, Dr. Shields opined, among other things, that Plaintiff was unable to stand for any amount of time and could sit for only four hours in an eight-hour day. Tr. 480. The ALJ declined to adopt this conclusion. Tr. 28.

The ALJ offered specific and legitimate reasons for rejecting that portion of Dr. Shields's opinion. Tr. 28. In contrast to Dr. Shields's opinion that Plaintiff was completely unable to stand and could not sit for more than four hours, Plaintiff admitted carrying heavy boxes only a month before Dr. Shields offered her opinion. Tr. 492. Plaintiff engaged in other activities that were incompatible with Dr. Shields's opinion, including walking to the grocery store located half a mile from home multiple times a week and carrying groceries home; performing volunteer work at a food bank every other week; maintaining her father's three-story house; cooking; and cleaning. Tr. 58, 68-73, 81. This evidence undercut Dr. Shields's opinion.

For those reasons, we conclude that substantial evidence supports the ALJ's decision.

//

*iii. Subjective testimony*

"If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Because the ALJ provided sufficient reasons for declining to accept Plaintiff's testimony about her symptoms, the Court upholds the decision.

The ALJ explained that Plaintiff performed a wide range of daily activities that were inconsistent with her allegations of disabling symptoms. Tr. 31. An ALJ may discredit a claimant's testimony based on her activities. 20 C.F.R. § 416.929(c)(3)(i). Here, Plaintiff acknowledged that she walked to and from the store half a mile away and carried groceries home; cared for her father's three-story house; completed various chores; volunteered at a food bank; continued to represent clients in court; prepared meals; and used public transportation. Tr. 58, 68-72, 81, 278-80, 966. Although Plaintiff insists that these activities "do not at all undermine [her] alleged limitations," ECF No. 13 at 20, the ALJ drew the reasonable conclusion that Plaintiff's activities were not as limited as one would expect, given her complaints of disabling symptoms (such as her alleged inability to walk for more than 200 feet or tend to her personal care). Tr. 31.

The medical evidence also undermined Plaintiff's subjective complaints. For example, even though Plaintiff alleged that she had problems walking and

performing other physical activities, shortly after injuring her left ankle in May 2010, Plaintiff reported that she was back on her feet carrying heavy boxes. Tr. 492. She injured her left calf in February 2011, but by the end of March, her physical therapist noted that Plaintiff had a nearly full range of motion. Tr. 538.

The ALJ offered sufficient reasons for discounting Plaintiff's subjective complaints. Thus, the ALJ's finding is affirmed.

### iv. Substance Abuse

The law precludes a claimant from receiving disability benefits if her substance abuse was "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In accordance with 42 U.S.C. § 423(d)(2)(C) and 20 C.F.R. § 416.935(a), the ALJ found that Plaintiff's substance use disorder was a "contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use." Tr. 33. As a result, the ALJ found that Plaintiff was not disabled. Tr. 33. In reaching that finding, the ALJ dedicated over ten single-spaced pages to explaining the substantial evidence underlying her determination. Tr. 22-33.

Plaintiff does not actually address the ALJ's extensive analysis. Instead, Plaintiff argues, with minimal citation to the record, that she had limitations before she started abusing alcohol. ECF No. 13 at 21.  Plaintiff's argument is not germane

to relevant inquiry, however. The cause of alcoholism is not a factor to consider; instead, the crucial inquiry is what functional limitations, if any, would persist absent Plaintiff's alcoholism. *See* 20 C.F.R. § 416.935(b) ("The key factor we will examine . . . is whether we would still find you disabled if you stopped using drugs or alcohol.").

Here, the ALJ focused on that key inquiry and carefully explained why Plaintiff's substance abuse was a contributing factor material to the disability determination —citing evidence, such as Dr. Shields's opinion that "most of [Plaintiff's] conditions are either caused by, or aggravated by, alcohol use" and Dr. Martin's conclusion that, "[w]ithout alcohol use, [Plaintiff] would not experience severe functional limitations." Tr. 487, 1037.

The ALJ's findings are affirmed.

     *v.*  *Step Four Analysis*

An ALJ's decision "must contain adequate rationale and findings dealing with all of the first four steps in the sequential evaluation process." SSR 82-62. First, Plaintiff argue that no evidence supported the ALJ's finding. Plaintiff is incorrect. Howard Platter, M.D., and Wayne Hurley, M.D., two state agency medical consultants, reviewed Plaintiff's records and concluded that she could occasionally perform those postural movements. Tr. 122-23, 138-39; *see* SSR 96-6p, *available at* 1996 WL 374180, at *2 (State agency medical consultants are

"highly qualified physicians and psychologists who are experts in the evaluation of medical issues in disability claims under the [Social Security] Act.").

Although Plaintiff selectively cites a few pages of documents that she contends support her position, ECF No. 13 at 23, the "key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997). Plaintiff points to no medical opinions evidence suggesting she suffered greater postural limitations than those found by the ALJ.

Second, Plaintiff argues that the ALJ failed to consider the effects sleep apnea had on her ability to work. To the contrary, the ALJ recognized that Plaintiff had sleep apnea and found it was a severe impairment at step two of the sequential analysis. Tr. 19, 23, 30. However, after reviewing all of the evidence, the ALJ found that Plaintiff could still perform sedentary work, which is the least physically demanding work under Social Security's regulations. Tr. 27; *see* 20 C.F.R. § 416.967(a) (defining sedentary work). Notably, Plaintiff does not identify any specific functional limitations stemming from her sleep apnea that were not already accounted for in this RFC.

//

//

Third, Plaintiff contends that the ALJ failed to consider the severity of her anxiety. However, the ALJ spent two-and-a-half pages explaining why Plaintiff's mental impairments would not be severe if she stopped using substances. Tr. 22-25.

Fourth, Plaintiff contends that the ALJ offered the VE an "incomplete hypothetical" because the ALJ did not adopt all of the limitations that Plaintiff advocated. But an ALJ may "reject restrictions in a hypothetical question that are not supported by substantial evidence." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Because the ALJ relied on substantial evidence in analyzing Plaintiff's credibility, weighing the medical opinion evidence, and ultimately assessing Plaintiff's RFC, the ALJ was not required to include limitations that the record did not support.

For the foregoing reason, the Court concludes that the ALJ's decision was supported by substantial evidence.

**F.   Conclusion**

In summary, the Court finds the record contains substantial evidence from which the ALJ properly concluded, when applying the correct legal standards, that Plaintiff does not qualify for benefits.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

ORDER **-** 14

2. The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3. **JUDGMENT** is to be entered in the Commissioner's favor.

4. The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 20th day of June 2016.

_____
SALVADOR MENDOZA, JR.
United States District Judge